**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

SALAH DADO,

            *Petitioner,*

*v.*

UNITED STATES OF AMERICA,

            *Respondent.*

_____/

CRIMINAL CASE NO: 09-20523
CIVIL CASE NO: 15-14049

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON MOTION TO VACATE SENTENCE (Doc. 443)**

## I.     RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Salah Dado's motion to vacate sentence pursuant to § 2255 (Doc. 443) be **DENIED**, and that this civil case be **DISMISSED**.

## II.     REPORT

### A.     Introduction

On November 10, 2015, Salah Dado ("Dado") filed a motion under 28 U.S.C. § 2255 challenging his conviction for conspiracy to distribute 1000 or more plants or 1000 kilograms or more of marijuana[1], and aiding and abetting the manufacture of 1000 or more marijuana plants. (Doc. 443). Dado was sentenced to two concurrent twenty-year terms of imprisonment, followed by two concurrent ten-year terms of supervised release.

---

[1] The statute under which Dado was convicted, 21 U.S.C. § 841, refers to the substance commonly known as "marijuana" using the antiquated spelling "marihuana." For the sake of clarity and consistency, the undersigned will use the modern spelling.

(Doc. 417). On December 10, 2015, Dado filed a memorandum of law, which the Court construed as a motion to amend, asserting that he was denied effective assistance of counsel. (Doc. 448). In this memorandum, Dado for the first time asserted that he was denied effective assistance of counsel because his trial counsel failed to inform him that his sentence would be enhanced under 21 U.S.C. § 851. On December 17, 2015, Dado filed a motion to amend his § 2255 motion. (Doc. 452). On December 22, 2015, the United States of America ("United States") filed a motion to strike the new and untimely issues raised in Dado's December 10, 2015, memorandum, and to deem waived the arguments Dado made in his § 2255 motion. (Doc. 449).

On January 11, 2016, the undersigned recommended that Dado's first motion to amend (Doc. 448) be granted in part, insofar as his claims related back to his original § 2255 motion, and denied in part insofar as he attempted to raise for the first time claims relating to 21 U.S.C. § 851. (Doc. 452). I also recommended that Dado's second motion to amend (Doc. 452) be granted, and that the Government's motion to strike (Doc. 449) be denied. (*Id*.). On August 4, 2016, District Judge Ludington adopted that recommendation. (Doc. 458).

On December 13, 2016, the Government filed a response to Dado's § 2255 motion (Doc. 460), and on February 13, 2017, Dado filed his reply (Doc. 463). Dado's § 2255 motion is therefore ready for a report and recommendation.

## B. § 2255 Limitation period

Motions under 28 U.S.C. § 2255 are governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). AEDPA, which became effective in April 1996 and thus

governs this 2013 conviction, imposes a one-year statute of limitations for a motion to vacate a sentence: "A 1–year period of limitation shall apply to a motion under this section." 28 U.S.C. § 2255(f). The limitation period runs from "the date on which the judgment of conviction becomes final." § 2255(f)(1). Where a defendant appeals their conviction to the Supreme Court but certiorari is not granted, the conviction becomes final upon the date of that denial. *See Sanchez–Castellano v. United States*, 358 F.3d 424, 426 (6th Cir. 2004).

Dado appealed to the Sixth Circuit Court of Appeals, which issued an opinion affirming his conviction on July 10, 2014, and issued a mandate enforcing that opinion on August 13, 2014. (Docs. 419, 420). He then appealed to the Supreme Court, which denied certiorari on November 10, 2014. (Doc. 423). The AEDPA statute of limitations on Dado's § 2255 motion thus expired one year after the date of the Supreme Court's denial of certiorari, *i.e.* on November 10, 2015. *See Bowling v. Haeberline*, 246 F. App'x 303, 305 (6th Cir. 2007). Dado's § 2255 motion, which is dated November 10, 2015, was therefore timely. (Doc. 443).

**C.     § 2255 Standards**

To prevail on a § 2255 motion "'a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of section 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a section

2255 motion alleging non-constitutional error only by establishing a "'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'" *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks omitted)).

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Court enunciated a two-pronged test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop trial strategy in the true sense – not what bears a false label of 'strategy' – based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007). Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. It is not enough to show that the alleged error "had some conceivable affect on the outcome of the proceeding." *Id.* Rather, the movant must show that, but for counsel's errors, the result would have been favorably different. *Id*. at 693. Failure to make the required showing under either prong of the *Strickland* test defeats the claim. *Id*. at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). This language highlights the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the trial process.

In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993), the Court clarified the meaning of "prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.

*Lockhart*, 506 U.S. at 369 (citations omitted).

Ineffective assistance of counsel claims "may be brought in a collateral proceeding under § 2255 whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).

D.    **Analysis**

i.    **Dado's Arguments Relating to *Alleyne***

In his § 2255 motion Dado asserts that: i) he was denied due process of law by 21 U.S.C. § 841(b), which does not require a jury finding that the defendant knew the amount and type of drugs involved; ii) he experienced ineffective assistance of appellate counsel because his attorney did not argue that 21 U.S.C. § 841(b) violated his due process rights; iii) his trial attorney failed to disclose the existence of a favorable plea

offer. (Doc. 448). Because Dado's first claim is wholly contingent on his second claim, I address these two claims jointly below.

Dado argues that he is entitled to relief from his conviction under 21 U.S.C. 841(b), because he was convicted under that statute despite lacking knowledge of the amount of drugs at issue in his case, a violation of his due process rights. (Doc. 443 at 5-7). Dado asserts that his appellate attorney argued that he was entitled to this relief under *Alleyne v. United States*, 133 S. Ct. 2151 (2013), but failed to argue that Dado's conviction under § 841(b) violated Dado's due process rights. (*Id*. at 6-7).

In his December 22, 2015, motion to amend, Dado expanded upon his claim that his rights to due process and effective assistance of counsel were violated. While recognizing that his appellate counsel argued that his conviction under § 841(b) should be vacated in light of *Alleyne v. United States*, 133 S. Ct. 2151 (2013), he nevertheless asserts this his attorney should have raised a "due process claim," which was "closely related to and not inconsistent with the other claims raised." (Doc. 452 at 3). Dado essentially asserts that his conviction under § 841(b) violates his due process rights by establishing a strict liability regime. (*Id.* at 7). Dado reproduces, at length, portions of his appellate counsel's brief, as follows:

> Under such a reading, the "knowingly or intentionally" language of the introductory portion of subsection (a) must be understood to modify all the elements of these offenses, including not only those set forth in subsection (a)(1), but also those set forth in subsection (b)(1), which together define the "aggravated" offenses of which Mr. Dado was convicted. Since the jury was expressly instructed to exclude this requirement from its deliberations, its findings cannot form a constitutionally adequate basis for the imposition of the 20 year mandatory minimum sentences he received.

Not only is this reading of the statute compelled by *Alleyne*, but adherence to the pre-*Alleyne* reading of the statute poses the potential for seriously anomalous outcomes.

Thus, for example, because the Guidelines' definition of "relevant conduct" does require a measure of scienter regarding drug quantity - reasonable foreseeability under U.S.S.G. § 1B1.3 - under the pre-*Alleyne* reading of the statute, a defendant might be found guilty of an "element" of an offense carrying a mandatory minimum sentence on a lesser showing than would be required for a mere "sentencing factor" which is only advisory.

In addition, in light of *Alleyne's* recognition of facts like drug type and quantity as elements of the offense, adherence to the pre-*Alleyne* reading of the statute would result in § 841 being construed as creating an entire class of at least partly "strict liability" offenses - a category of offense strongly disfavored in the law. *See, e.g., United States v. Bailey*, 444 U.S. 394, 404 n. 4 (1980). Moreover, and counterintuitively, it would only be the "aggravated" offenses, in which, for example, elevated drug quantities were an element, which would be so stripped of the requirement of knowledge or intent. *See, e.g., United States v. United States Gypsum Co.*, 438 U.S. 422, 442 (1978) (referring to felony offenses carrying up to three years imprisonment: "The severity of these sanctions provides further support for our conclusion that the Sherman Act should not be construed as creating strict-liability crimes.")

(Doc. 452 at 7-9) (quoting *United States v. Dado*, No. 13-1578, *Defendant-Appellant's Br. on App.* at 54-55). Dado complains that his appellate counsel "did not raise the Due Process issue simply because it did not occur to him," and that he was thereby subjected to ineffective assistance of counsel. (Doc. 452 at 9).

Dado supports his claim by reference to Supreme Court and Sixth Circuit cases establishing the general rule that criminal statutes must include a knowledge requirement. (Tr. 452 at 3-5). He argues that "the Constitution bars criminal punishment for otherwise-innocent conduct absent proof of wrongful intent." (*Id*. at 5). He also references *Staples v. United States*, 511 U.S. 600, 607 (1994), wherein the Supreme Court concluded that a criminal statute prohibiting possession of a machine gun must be read to include a

knowledge component, or else render the statute unconstitutional as a violation of due process. (*Id*. at 5-6). Dado also reproduces at length portions of his appellate counsel's brief, including arguments relating to the "anomalous outcomes" produced by failing to read a knowledge component into § 841(b), including that the lesser version of the offense requires knowledge, while the heightened version does not. (*Id*. at 6-8). He also asserts that the dissent in his direct appeal confirmed that his conviction under § 841(b) should have been overturned as contrary to the rule of *Alleyne* and the disfavored status of strict liability crimes. (*Id*. at 5-6).

Dado thus recognizes that the Sixth Circuit specifically addressed the application of *Alleyne* in his direct appeal, but nevertheless argues that he is entitled to relief on collateral review because his appellate counsel should have focused more heavily on the issue of due process. (*Id*. at 3).

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000) the Supreme Court determined that "[t]he Fourteenth Amendment right to due process and the Sixth Amendment right to trial by jury, taken together, entitle a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Id*. Sentencing courts were thereby prohibited from applying what was characterized as a "sentence enhancement" to effectively convict the accused of a new crime with new elements. Instead, any "enhancements" which would alter the potential maximum punishment were considered elements, and those elements must be found by a jury.

In *Alleyne* the Supreme Court extended the logic of *Apprendi*, concluding that a statutory scheme which "increases either end of the range produces a new penalty and constitutes an ingredient of the offense" which must be submitted to the jury. *Alleyne*, 133 S. Ct. at 2160.

Dado went to trial and the jury specifically found on Count 1 that "the conspiracy as a whole involved . . . 1000 or more marijuana plants, regardless of weight, or 1000 kilograms or more of marijuana," on Count 4 that Dado was guilty of "aiding and abetting marijuana manufacturing from the spring of 2009 until on or about October 13, 2009," and that "the offense in count 4 involved . . . 1000 or more marijuana plants." (Doc. 322). There is no question in this case that the jury concluded Dado knowingly participated in a scheme to manufacture marijuana with intent to distribute, and that the scheme involved at least 1000 marijuana plants.

It is important to note that Dado's attorney on direct appeal argued that *Alleyne* rendered Dado's sentence unconstitutional. In particular, he asserted that, in light of *Alleyne*, § 841(b) can no longer be interpreted as a mere "sentencing factor," but must instead as an element of an offense separate from § 841(a), with the prior subsection establishing a "core" offense, and the latter subsection establishing an "aggravated" offense. *United States v. Dado*, No. 13-1578, *Defendant-Appellant's Br. on App.* at 52. Dado's appellate counsel also argued that the Government's interpretation of § 841(b) creates a strict liability regime, which is "strongly disfavored in the law." *Id*. at 55. He cited a treatise on criminal law, produced by Professor Wayne LaFave, who asserted that "the notion that 'the mistake by the defendant may be disregarded because of the fact that

he actually intended to do some legal or moral wrong' is . . . 'unsound, and has no place in a rational system of substantive criminal law.'" (*Id.* at 55 n.13) (quoting Wayne R. LaFave, Criminal Law 305 (5th ed. 2010).

As restated by the majority (*i.e.* judges Karen Moore and Eric Clay), Dado's appellate attorney "assert[ed] that after Alleyne, we must read § 841(a) and § 841(b) together, and that the "knowingly or intentionally" element of § 841(a) now applies equally to the "involved" element of § 841(b)." (Doc. 419 at 24). The majority found this argument unconvincing, and concluded that "*Alleyne* did not rewrite § 841(b) to add a new mens rea requirement," such that "§ 841(b) still allows for strict liability as to the type and quantity of the drugs involved in a § 841(a) offense." (Doc. 419 at 24). The majority concluded the decision by noting, in a vague and foreboding manner, that "Defendant correctly notes that strict liability punishment schemes are strongly disfavored in criminal law, and points out the potential for anomalous results under the current reading of § 841. Our Circuit has not resolved whether § 841(b) can survive a due process challenge and we do not reach that question today." (*Id.* at 25).

The majority noted that many defendants attempted to challenge the strict liability regime imposed by § 841(b) in the wake of *Apprendi*, but that courts consistently rejected that argument due to the "plain language of 'the penalty provisions of § 841(b), which require only that the specified drug types and quantities be 'involved' in an offense.'" (Doc. 419 at 23) (quoting *United States v. Gunter*, 551 F.3d 472, 485 (6th Cir. 2009)). The majority noted that "[e]very other Court of Appeals that has considered this issue has reached the same conclusion." (Doc. 419 at 23). The majority also found that *Alleyne* said

nothing about the *mens rea* required to find a violation of § 841(b), thus *Alleyne* does not require that the knowledge required under § 841(a) be read into § 841(b). (*Id*.).

Circuit judge Gilbert Merritt dissented, writing that "[t]he keystone of the [government's] argument is that sections 841(a) and (b) are totally unrelated when it comes to the defendant's guilt. *Alleyne* removes this keystone." (Doc. 419 at 26). Judge Merritt argued that the majority's reading ran counter to a commonsense interpretation of § 841(a) and (b), that it risked over-punishing small-time players in drug conspiracies who were ignorant of the scope of the conspiracy, and that it ignored the strong presumption against strict liability crimes. (*Id*. at 27-28). Judge Merritt further "note[d] in passing that the defendant was sentenced to an absurdly long mandatory sentence of 20 years imprisonment for growing marijuana plants. In a legal system that has historically strongly disfavored criminal strict liability and has favored requiring mens rea or knowledge of the crime, we should not hesitate to insist that the prosecutor prove a defendant's knowledge of the scope of the conspiracy." (*Id*. at 28).

Courts around the country continue to find that § 841(b) and other similarly drafted controlled substance statutes can be violated even where the defendant had no knowledge of the amount of drugs involved in the conspiracy. *See, e.g.*, *United States v. Soto–Zuniga*, 837 F.3d 992, 1005 (9th Cir. 2016) ("We conclude that Soto–Zuniga's knowledge of the type and quantity of the drugs found in his car is not an element under 21 U.S.C. § 841."); *United States v. Jefferson*, 791 F.3d 1013, 1016 (9th Cir. 2015) ("Determining which facts increase the mandatory minimum sentence is instead a statute specific inquiry—and *Alleyne* does not alter our precedent that a defendant's knowledge

of the type and quantity of the controlled substance he imports is not such a fact, and, therefore, not an element of the offense."), cert. denied, 136 S. Ct. 1473 (2016); *United States v. Watson*, 620 F. App'x 493, 509 (6th Cir. 2015) ("Alleyne deals with the quantum of proof that applies, not with mens rea."), cert. denied sub nom. *Meeks v. United States*, 137 S. Ct. 332 (2016); *United States v. Garcia*, 563 F. App'x 714, 717 (11th Cir. 2014) (concluding that *Alleyne* did not require application of the mens rea requirement under § 841(a) to § 841(b)).

There is very little daylight between the argument presented on direct appeal and Dado's proposed due process argument. Both arguments assert that enhancement under § 841(b) without a finding of knowledge as to the amount of plants involved in the conspiracy violates *Alleyne*. Dado's argument on collateral appeal simply marshals additional support for the same conclusion: that in the wake of *Alleyne* statutes which enhance the penalties associated with drug conspiracies based on the amount of drugs involved violate due process rights insofar as the enhancement can be employed without a finding of knowledge on each defendant's part as to the quantity of drugs. Insofar as Dado merely reasserts, with slightly more supporting case law, the same argument raised and rejected on direct appeal, his argument fails. *See Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) ("[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal . . . .").

Admittedly, there is one point of confusion in this matter, generated by the majority's offhand comment in Dado's direct appeal, that the circuit "has not resolved whether § 841(b) can survive a due process challenge." (Doc. 419 at 25). In the context

of *Alleyne*, the process to which a defendant is due is to have each element of crime of which they are accused decided by an impartial jury. *See Alleyne*, 133 S. Ct. at 2156 ("The Sixth Amendment provides that those 'accused' of a 'crime' have the right to a trial 'by an impartial jury.' This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt."). Dado can therefore be forgiven for believing that his appellate counsel neglected to raise some potentially viable variant of a due process argument. Yet it appears that Dado's due process argument on collateral appeal is essentially duplicative of the argument raised on direct appeal.

In sum, no federal court has concluded that § 841(b) must be read to include a knowledge element specific to that statutory subsection. This is not to ignore the existence of some judges in the nation's federal courts of appeal who, like Judge Merritt, question the sensibility of the strict liability regime imposed by certain federal controlled substance statutes. In *Jefferson*, 791 F.3d at 1019, the Ninth Circuit Court of Appeals affirmed the conviction and sentence of a defendant under 21 U.S.C § 960(a) and (b) for importation of methamphetamine. The language of those statutes mirrors the language of 21 U.S.C. § 841(a) and (b), providing under subsection (a) that "[a]ny person who . . . knowingly or intentionally imports or exports a controlled substance ... shall be punished as provided in [21 U.S.C. § 960(b)]," with § 960(b) in turn providing for various penalties depending upon the amount and type of drug being imported. Both sections § 841(a) and § 960(a) provide for the *mens rea* of knowledge, whereas both § 841(b) and § 960(b) do not. The defendant in *Jefferson* asserted that he did not know the amount of

methamphetamine that was in his truck, and wrongly believed that he was importing marijuana. *Id*. In a manner nearly identical to Dado's argument in this matter, the defendant in *Jefferson* asserted that *Alleyne* required that the *mens rea* of subsection (a) be imported into subsection (b). The Ninth Circuit rejected that argument, holding that "*Alleyne* does not alter our precedent that a defendant's knowledge of the type and quantity of the controlled substance he imports is not such a fact, and, therefore, not an element of the offense." *Id*. at 1017.

Judge William Fletcher wrote a concurring opinion in which he argued that Congress did not intend to apply a heightened punishment to defendants who believe that they are importing a less dangerous drug (*e.g.* marijuana) but are in reality are trafficking in a more dangerous drug (*e.g.* methamphetamine). *Id*. at 1019. Judge Fletcher noted the presumption against strict liability crimes, the lack of any language in 21 U.S.C. § 960 overcoming the presumption of *mens rea*, and the high sentencing range applicable under the law. *Id*. at 1019-22. Judge Fletcher also pointed to "the Supreme Court's increasing attention to the Sixth Amendment consequences of statutory sentencing schemes," noting that "*Alleyne* reflects a broader concern with the unfairness of sentencing schemes in which the facts that are legally essential to the punishment to be inflicted need not be found beyond a reasonable doubt." *Id.* at 1022 (quotation omitted). Judge Fletcher further argued that

> There is no reason, in light of *Alleyne*, why it should be enough for the government to prove that a defendant knew that he was carrying a controlled substance, irrespective of what that substance was, in order to subject him to the mandatory minimum sentences set out at § 960(b). If the government must prove that Jefferson "knowingly" imported four kilograms of

methamphetamine into the United States—that is, if both the fact of importation and the type of drug are "elements" of the crime—it should be required to prove not only that Jefferson knew he was importing an illegal drug, but also that he knew what that drug was.

*Id*. at 1021-22.

The wind of legal thought may, in fact, be shifting toward requiring proof of *mens rea* in a greater number of controlled substance statutes to ensure compliance with the Sixth Amendment right to due process. Whatever its persuasive value, the argument for incorporating a *mens rea* component in § 841(b) has yet to be adopted by the Supreme Court, any federal court of appeals, or (to the knowledge of the undersigned) any district court. Courts to examine the impact of *Alleyne* on § 841(b) have universally concluded that the Supreme Court's decision does not rewrite that statute to include a *mens rea* component separate from § 841(a).

This lack of success is particularly important given that this Court is not presiding over Dado's trial or his direct appeal. Instead, the undersigned must merely determine whether Dado's appellate counsel was constitutionally ineffective for failing to argue that the increase in his sentence pursuant to § 841(b) without a finding that he knew the amount of marijuana plants involved in the conspiracy was a violation of his right to due process. *Strickland* requires that defense attorneys provide counsel which does not "f[all] below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. It does not require that counsel pursue arguments which are "meritless." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013); *see also United States v. Hunter*, No. 3:06-CR-061, 2013 WL 4671196, at *15 (S.D. Ohio Aug. 30, 2013) ("It was therefore not ineffective

assistance of appellate counsel for Attorney Schad to have failed to make an argument which was very unlikely to succeed."). Furthermore, Strickland does not mandate that defense attorneys "raise every nonfrivolous issue" on appeal, even where raising that issue is specifically "requested by the defendant." *Jones v. Barnes*, 463 U.S. 745, 745 (1983). The Fourth Circuit has expressed a similar sentiment in plainer terms: "[W]e do not penalize attorneys for failing to bring novel or long-shot contentions." *United States v. Mason*, 774 F.3d 824, 830 (4th Cir. 2014). Since the argument raised by Petitioner has not been adopted in this Circuit or any other of which the Court is aware, counsel could not be viewed as ineffective for failing to raise the issue.

As to prejudice, Dado suffered none. Dado's appellate counsel made a longshot argument that *Alleyne* invalidated the enhancement of his conviction under § 841(b). No federal court has yet been persuaded by such an argument, and Dado was therefore extremely unlikely to succeed on that variation of the argument. The Sixth Circuit's opaque suggestion that § 841(b) may not "survive a due process challenge" cannot bestow vitality to this argument which has found no success amongst federal courts nationwide.[2] Therefore, Dado's appellate attorney was not ineffective for failing to shift the wind of national legal thought.

---

[2] Even if the Sixth Circuit expressly announced in its order on Dado's direct appeal that it would have granted relief if he had wrapped his argument in the language of due process, Dado's appellate counsel would not have been privy to that information at the time he argued the appeal, and could not be found ineffective. "[A]ppellate counsel is not ineffective for failing to predict the development of the law." *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 288 (6th Cir. 2010).

### ii. Dado's Knowledge of the Plea Offer

Finally, Dado argues that his conviction must be set aside because his trial counsel failed to communicate a plea offer. (Doc. 443 at 8). Dado's December 10, 2015, motion to amend further develops his assertion that he received ineffective assistance of counsel because his trial attorney failed to disclose the existence of a plea offer. (Doc. 448). Dado asserts that "[p]rior to trial, [he] informed [his] attorney . . . that [he] would entertain any reasonable plea offer and encouraged that [his attorney] engage the United States in plea negotiations in avoidance of trial." (*Id.* at ¶ 4). Dado states that he "made it explicitly clear to [his] trial counsel that it was [his] intent to plead guilty to the instant offense," but his trial counsel suggested that "he believed the government would not be able to prove its case-in-chief, and that the likelihood of success at trial was 'very good' due to circumstantial evidence and the government's quick rush to judgment." (*Id.* at ¶¶ 6-7). Dado claims that upon his trial attorney's advice "and without any knowledge of a formal plea offer," he went to trial. (*Id.* at ¶ 9). Dado also asserts that his trial counsel acted in a coercive manner to convince him to go to trial (*Id.* at ¶ 10), though he does not further explain precisely how he was coerced.

In the context of plea offers, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused . . . . When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." *Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012). Such a failure satisfies the first prong. The second prong requires demonstration

that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In other words, the defendant must demonstrate that, but for counsel's deficient performance, he or she "would have accepted the plea." *Lafler v. Cooper*, 566 U.S. 156 (2012).

As the Government aptly notes, Dado's allegations are wholly undermined by the court record. (Doc. 460 at 3-4). At the final pre-trial conference on January 17, 2012, District Judge Ludington expressly stated "I want to be sure in considering the fact that [Dado] is expressing his desire to proceed to trial, that he's also doing so in an intelligent way in bringing the plea bargaining process to a conclusion." (Doc. 430 at 4). The United States Attorney then described the charges of which Dado was accused, along with the maximum penalties associated with those charges, *i.e.* life imprisonment on each charge. (*Id*. at 5). Dado affirmed that he was familiar with the charges, and with the maximum terms of imprisonment associated with each charge. (*Id*. at 6). District Judge Ludington made specific reference to "the plea bargaining agreement," and confirmed that Dado had "been provided with a Rule 11 Agreement." (*Id*.). Dado was asked whether he "had a chance to review" that agreement "with some care;" his attorney responded that they had "reviewed it thoroughly." (*Id*. at 6). Dado's attorney affirmed that Dado understood the final pre-trial conference was his last opportunity to accept or reject the plea offer, and that Dado had elected to proceed to trial regardless of the plea offer in full understanding of the "risks that are associated with that decision." (*Id*.). Dado then confirmed his attorney's statements. (*Id*. at 7).

The Government also presents an affidavit produced by Dado's trial counsel on December 28, 2015, wherein he asserts that he "thoroughly reviewed the proposed Rule 11 plea agreement with Mr. Dado," that "[a]fter careful review" Dado "decided to reject the government's plea offer and proceed to trial," and he discussed with Dado "in full detail the risks associated with his decision." (Doc. 443 Ex. 2).

In his reply, Dado perplexingly reasserts that he was unaware of the sentence he faced if he went to trial. (Doc. 463 at 3-4). It is frankly unclear whether Dado intends to challenge the veracity of the final pre-trial hearing transcript, or simply ignores it. Dado also (inconsistently) asserts that, insofar as his trial attorney mentioned the existence of a plea offer, he did not properly discuss the dramatically higher sentencing potential of going to trial, or the likelihood of prevailing at trial. (*Id*. at 4). Dado also maintains, contrary to evidence in the record, that he first learned of the existence of a plea offer "after his conviction and sentence, when [he] received all of his legal materials from appellate counsel." (*Id*. at 5). Dado then contradicts himself once more, recognizing that he was present at the final pre-trial hearing, and that he was aware of the plea offer, but asserts that he "simply agreed with [trial] counsel's statements." (*Id*. at 6).

Dado's claims are quite thoroughly undermined by the evidence of record which aptly demonstrates that he was fully aware of the existence of the plea offer, its general contours, and the risks of rejecting that plea. The record of the final pre-trial hearing clearly shows that Dado declared in open court that he knew of the plea offer, the court ensured he was informed of the maximum penalties he faced at trial, and affirmed he was

knowingly rejecting the plea offer. Further, Dado's trial counsel has affirmed under oath that he discussed the terms of the plea offer with Dado. (Doc. 460 Ex. 2).

Dado does not argue that he was not privy to the details of the plea offer, including the charges to be dropped, the sentencing guideline range, and the recommended sentence. Likewise, he does not demonstrate that he would have accepted the plea offer if he was fully informed of these non-described details. This failure is sufficient to defeat his claim. *See Sy Khue Xiong v. Curtin*, No. 1:11CV1202, 2014 WL 3738072, at *13 (W.D. Mich. July 29, 2014) ("Petitioner does not identify the details that counsel should have explained to him, however. Nor does he claim, let alone demonstrate, that he would have accepted the plea offer had he been given a more detailed explanation. Consequently, Petitioner's claim is without merit because he has not established that his counsel's allegedly ineffective assistance prejudiced him.").

In sum, Dado has failed to demonstrate either of the *Strickland* prongs necessary to obtain relief with regard to his plea argument. He has not demonstrated that he was unaware of the existence of the plea offer, which was incontrovertibly discussed at the final pre-trial hearing. Dado likewise has failed to identify which portions of the plea offer he was unaware. Nor has he shown that he would have taken the plea offer if he was apprised of the full details of the offer. Dado's displeasure at deciding to take his chances at trial and losing that bet does not delete from the record his knowledge of the existence of a plea offer, nor does it transform his attorney's suggestion to go to trial into ineffective assistance of counsel.

### D.    Evidentiary hearing

Section 2255 states that

> [u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). The Sixth Circuit has "observed that a Section 2255 petitioner's burden for establishing an entitlement to an evidentiary hearing is relatively light." *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citation omitted). "In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007).

On the other hand, no hearing is required if the motion's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted). Additionally,

> The words 'grant a prompt hearing' are not magic words requiring a district judge, who is fully familiar with the circumstances under which a guilty plea was made, to duplicate procedures and conduct a hearing to resolve alleged fact issues which can and should be decided on the record that already exists.

*United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993).

In the instant case, because Dado's motion, in light of the files and records of this case, "conclusively show that [he] is entitled to no relief," I suggest that no evidentiary

hearing is necessary and that Dado's § 2255 motion should be denied. *See* 28 U.S.C. § 2255(b).

## III.  <u>CONCLUSION</u>

Pursuant to the findings above, the Court **RECOMMENDS** that Dado's § 2255 motion (Doc. 443) be **DENIED**, and that this civil case be **DISMISSED**.

## IV.  <u>REVIEW</u>

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party

may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 25, 2017                                    S/ PATRICIA T. MORRIS
                                                         Patricia T. Morris
                                                         United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Salah Dado #48516039 at Loretto Federal Correctional Institution, Inmate Mail/Parcels, P.O. Box 1000, Loretto, PA 15940.

Date: April 25, 2017                                    By s/Kristen Castaneda
                                                        Case Manager