UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

v.                                                                          Case No. 09-CR-20523-09
                                                                            Honorable Thomas L. Ludington

SALAH DADO,

               Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

On May 2, 2012, a federal jury convicted Defendant Salah Dado of one count of conspiracy to manufacture 1000 or more marijuana plants and conspiracy to possess with intent to distribute 1000 kilograms or more of marijuana and one count of manufacturing 1000 or more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. ECF No. 322. After months of post-trial litigation, Defendant was sentenced on April 22, 2013 to concurrent sentences of 240 months imprisonment for each count along with two concurrent 10-year terms of supervised release. ECF No. 412. Defendant is currently housed at Federal Correctional Institution, Milan ("FCI Milan") in Milan, Michigan.

On September 15, 2020, Defendant, through counsel, filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), citing the COVID-19 pandemic and his health condition. ECF No. 481. Timely response and reply briefs have been filed. ECF Nos. 482, 483. For the reasons stated below, Defendant's motion for compassionate release will be denied.

## I.

Defendant seeks a reduction of his sentence to time-served pursuant to 18 U.S.C. § 3582(c)(1)(A), which provides:

> The court may not modify a term of imprisonment once it has been imposed except…upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that…extraordinary and compelling reasons warrant such a reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A). The statute provides three inquiries that must be addressed in resolving Defendant's motion for compassionate release. First, whether Defendant fully exhausted his administrative remedies with the Bureau of Prisons (the "BOP"). Second, whether a sentence reduction is warranted in consideration of the factors set forth in 18 U.S.C. § 3553. Finally, whether "extraordinary and compelling reasons warrant such a reduction" and whether the reduction is consistent with the applicable Sentencing Commission policy statements. Each inquiry will be addressed in turn.

## A.

As explained in the statute, before a court may consider an inmate's request for a reduced sentence under 18 U.S.C. § 3582, the inmate must first exhaust his administrative remedies with the BOP or wait 30 days after making such a request. The Sixth Circuit has explained that:

> By creating a compassionate-release option in the First Step Act, Congress gave inmates an option to seek early release on health grounds. The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause.

- 2 -

*United States v. Alam*, 2020 WL 2845694, at *4 (6th Cir. June 2, 2020). On or about May 7, 2020,

Defendant filed a request for compassionate release with the BOP. ECF No. 481 at PageID.3346.

His request was denied by Warden Jonathan Hemingway on June 1, 2020. ECF No. 481-8 at

PageID.3382. Accordingly, Defendant has exhausted his administrative remedies with the BOP.

**B.**

The next consideration is whether the sentence reduction is warranted under the factors of

18 U.S.C. § 3553(a). They are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…
>
> (5) any pertinent policy statement…
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Defendant persuasively argues that the § 3553 factors support an early

release. First, his criminal history is nonviolent and relatively limited. Defendant's underlying

conviction stems from his involvement in a large marijuana grow operation. ECF No. 322.

Defendant's primarily role, as stated in his presentence investigation report ("PSR"), was as a financier. Defendant advanced funds for the operation to his co-conspirators, who managed the operation, and purchased substantial quantities of the yield. Because of a prior marijuana offense, Defendant was subject to a mandatory minimum sentence of 20 years, which, as recognized at sentencing, "vastly exceed[ed] the [usual] guidelines." ECF No. 417 at PageID.2944. The prior marijuana offense—Defendant's only other conviction—was a state offense for possessing with intent to deliver five to 45 kilograms of marijuana. Defendant was convicted of that offense in 2004 and went on to serve 78 days in custody and 36 months of probation.

With respect to the need for the sentence imposed, Defendant has exemplified model behavior since entering custody over eight years ago. In addition to completing over two dozen educational courses, Defendant has been approved for the "Gate Pass" program, which allows him to be placed on certain work assignments outside FCI Milan. *Id.* at PageID.3340–41. He has had no recent disciplinary incidents, *Id.* at PageID.3354, and the BOP has given him a minimum PATTERN score, indicating that he poses a minimal risk of recidivism. ECF No. 481-4. Indeed, as of July 2020, *Id.* at PageID.3345, Defendant's BOP Reentry Plan Progress Report indicates that he is "a good candidate for immediate home confinement" and will be considered for such relief "when he has served at least 50% of his sentence."[1] ECF No. 481 at PageID.3341.

The Government, however, argues that Defendant's "history and characteristics . . . show that he is likely to commit dangerous crimes over and over again." ECF No. 482 at PageID.3389. Specifically, the Government points to Defendant's 2004 conviction, the fact that police discovered a firearm at Defendant's place of business among marijuana paraphernalia, and the fact that Defendant intimidated adverse witnesses (his co-conspirators), whom were told that

---

[1] It should be noted that Defendant's sentence was dramatically higher than those of his co-conspirators. ECF No. 481 at PageID.3339–40.

Defendant had placed substantial bounties on them.[2] *Id.* at PageID.3390. Ultimately, the Government's position is unpersuasive.

To begin, the Government ignores Defendant's substantial correctional programming as well as the BOP's finding that Defendant might soon be eligible for home confinement. In light of the circumstances presented by Defendant, the BOP's finding seems warranted. The Government also overstates Defendant's criminal history. While drug offenses are serious, this Court previously observed that "[Defendant's] involvement did not go beyond financing," and that he was "[n]ot a man who controlled the operation itself." ECF No. 405 at PageID.2882. Similarly, Defendant's 2004 conviction—his only other conviction—was a marijuana offense that is now 16 years removed. And while prior instances of gun possession and witness intimidation are, of course, alarming, they are not dispositive for purposes of § 3553. What ultimately put Defendant in prison was an illegal business venture, not any threats or acts of violence.[3] The prior eight years only support the view that, if released, Defendant would pose a minimal risk of recidivism. Accordingly, given the nature of his criminal history, correctional programming, and time served, Defendant has shown that the § 3553 factors support a sentence reduction.

## C.

The next inquiries to be resolved are whether "extraordinary and compelling reasons warrant such a reduction" and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission promulgates the

---

[2] This allegation was included in Defendant's PSR and later litigated by the parties. This Court concluded that the documents raising the allegation were reliable for purposes of sentencing. *See* ECF No. 405 at PageID.2883–86 (discussing threats and concluding that an obstruction of justice enhancement an enhancement under [U.S.S.G.] § 3C1.1 for obstruction of justice is potentially warranted").

[3] The Government notes that Defendant was previously arrested for assault and battery but omits the fact that the arrest was in 2000 and the charge was dismissed. ECF No. 482 at PageID.3389.

United State Sentencing Guidelines ("U.S.S.G."). The applicable policy statement is found in

U.S.S.G. § 1B1.13, which provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment…if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
>
> > (1)(A) Extraordinary and compelling reasons warrant the reduction;…
> >
> > (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> >
> > (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. While Defendant would likely not pose a danger to the safety of others or the

community, he has failed to show an extraordinary and compelling reason for release.

**1.**

The commentary of the policy statement provides additional guidance about which

circumstances qualify as extraordinary and compelling reasons. It provides:

> [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.--
>
> > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > (ii) The defendant is--
> >
> > > (I) suffering from a serious physical or medical condition,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or
> > >
> > > (III) experiencing deteriorating physical or mental health because of the aging process,

- 6 -

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.--

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13. Defendant offers two reasons that he suggests are extraordinary and compelling. He first argues that, given his medical conditions, he is at a substantial risk of contracting a severe case of COVID-19. ECF No. 481 at PageID.3349–52. Subsection (A) requires that Defendant suffer from either a "terminal illness" or a "serious physical or medical condition" that "substantially diminishes" his ability to provide self-care within the custodial environment. U.S.S.G. § 1B1.13. Defendant is a 42-year-old male who suffers from obesity[4] and thalassemia, a blood disorder that causes anemia. ECF No. 481 at PageID.3341. . Even in combination with the risk of COVID-19, neither condition satisfies subsection (A). *See United States v. Price*, No. 15-20472, 2020 WL 5440164, at *5 (E.D. Mich. Sept. 10, 2020) ("[T]his Court has declined to order the release of otherwise healthy and relatively young inmates with obesity as their only cognizable risk factor, absent other indications of serious medical risk."); *United States v. Minaya*, No. 01

---

[4] As the Government notes, Defendant is only slightly obese, with a BMI of 30. ECF No. 481-6 at PageID.3376.

CR 619(VM), 2020 WL 5512518, at *1 (S.D.N.Y. Sept. 14, 2020) (finding no extraordinary and compelling reason for release for 56-year-old inmate with thalassemia, hypertension, and other medical conditions). Indeed, the CDC states only that thalassemia "might increase" the risk of severe illness from COVID-19. *People With Certain Medical Conditions*, CDC (Nov. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#hemoglobin-disorders [https://perma.cc/SEL9-W8TU].

Furthermore, while FCI Milan experienced outbreaks earlier in the pandemic, the facility is currently reporting only two active COVID-19 infections, both among staff. *COVID-19*, BOP, https://www.bop.gov/coronavirus/ [https://perma.cc/2MEL-GFUU] (last visited Nov. 6, 2020). FCI Milan also appears capable of managing Defendant's medical conditions. For example, his medical records reflect that medical staff at FCI Milan have counseled him on his weight.  ECF No. 481-6 at PageID.3378. Defendant has, at most, alleged an elevated risk of contracting a serious case of COVID-19. Without minimizing his concerns, "a generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release." *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020). Accordingly, Defendant has not demonstrated an extraordinary and compelling reason for release based on his health condition.[5]

Defendant next argues that his "exceptionally long sentence relative to current law" is an extraordinary and compelling reason for release. ECF No. 481 at PageID.3352–53. The only authority he cites is from the District of Rhode Island. *See United States v. Vigneau*, No. 97-CR-33-JJM-LDA, 2020 WL 4345105, at *4 (D.R.I. July 21, 2020) (noting that "[c]ourts in other

---

[5] The other subsections provided in the policy statement commentary are clearly inapplicable. Defendant's situation does not qualify as "extraordinary and compelling" under subsection (B) because he is 42 years old. Additionally, he does not qualify under subsection (C) because has not alleged the death or incapacitation of a spouse or caregiver of his minor children.

districts have determined that unusually long sentences by today's standards could support an 'extraordinary and compelling' reason to reduce a sentence"). Absent any authority from the Sixth Circuit, this Court declines to venture so far from the policy statement commentary. *See United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009) ("[T]here is no inherent authority for a district court to modify an otherwise valid sentence.") Based on the foregoing, Defendant has failed to demonstrate an extraordinary and compelling reason for release.

**2.**

The policy statement further directs the Court to consider the factors in 18 U.S.C. § 3142 in determining whether the defendant would be a danger to others or the community. The § 3142 factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

> (2) the weight of the evidence against the person;

> (3) the history and characteristics of the person, including--

>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…

18 U.S.C. § 3142(g). These factors decidedly weigh in favor of Defendant. "The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community 'refers to the danger that the defendant might engage in criminal activity to the

detriment of the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (internal quotation marks omitted). As discussed in Section I.B., *supra*, Defendant's criminal history is nonviolent and relatively short, and the BOP considers his risk of recidivism minimal— a conclusion amply supported by his years of successful correctional programming. Moreover, Defendant has enjoyed the support of family throughout his incarceration, and, when released, he will presumably return to a constructive living environment.

However, as discussed in Section I.C.1., *supra*, the lack of an extraordinary or compelling reason for release means that Defendant is ineligible for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Accordingly, Defendant's motion for compassionate release must be denied.

## II.

Accordingly, it is **ORDERED** that Defendant Salah Dado's Motion for Compassionate Release, ECF No. 481, is **DENIED**.

Dated: November 12, 2020                    s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge

- 10 -